A96A0632. CHEROKEE COUNTY v. NORTH COBB SURGICAL ASSOCIATES, P. C.
(471 SE2d 561)

BIRDSONG, Presiding Judge.

Cherokee County appeals from the grant of summary judgment to North Cobb Surgical Associates, P. C., in North Cobb Surgical

Associates' suit to recover for medical services provided Michael McFarland after McFarland was shot by a Cherokee County deputy sheriff while McFarland was being arrested. The court below found the county was liable under OCGA § 42-5-2 because McFarland's medical expenses were incurred while he was in the physical custody of Cherokee County. On appeal Cherokee County contends the lower court erred by determining that McFarland was in the physical custody of Cherokee County and by determining that McFarland was not required to establish indigency or show inability to pay his medical expenses before shifting the burden of his medical expenses on the county.

After receiving a request for assistance from the Canton city police, Cherokee County deputy sheriffs were dispatched to the scene. They found McFarland holding a large knife and acting erratically. Efforts to convince McFarland to surrender were unsuccessful; the confrontation ended when McFarland charged a deputy sheriff and the deputy shot McFarland in the abdomen. After McFarland was given first aid by the deputies, he was transported to the hospital by Cherokee County Emergency Medical Services. On the way, however, McFarland caused a disturbance that resulted in a deputy sheriff handcuffing him to the stretcher and escorting him to the hospital.

After the shooting, deputies from the Cherokee County Sheriff's Department investigated the incident. They obtained warrants to search McFarland's apartment and to secure blood samples from McFarland in the hospital. The record, however, does not show whether McFarland was ever prosecuted for any offense arising from this incident.

In the hospital, McFarland received treatment from North Cobb Surgical Associates. When Cherokee County was billed for these services and did not pay, North Cobb Surgical Associates filed this action. Cherokee County filed this appeal after the trial court granted North Cobb Surgical Associates' motion for summary judgment. *Held*:

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. Cherokee County's contention that McFarland was not in the county's physical custody is based on its assertions that the county's deputies merely assisted the Canton city police, that McFarland was never considered under arrest, and that McFarland was never detained in the Cherokee County Adult Detention Facility.

(a) We find no support in the record for the assertion that McFarland was not in the physical custody of the county. Regardless of the basis for the deputies' presence on the scene, North Cobb Surgical

Associates produced evidence that Cherokee County deputies were involved in subduing McFarland, taking away his knife, giving him first aid, and then transporting him to the hospital. Nothing in the record shows that in doing so they were acting under the direction and control of the City of Canton. Therefore, Cherokee County failed to carry its burden of pointing "to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins*, supra. Moreover, without evidentiary support in the record, the county's argument that McFarland "*may*" have been in the custody of the city adds nothing to its case.

(b) We also find no support for the contention that McFarland was not under arrest. "[A]rrest is defined as 'the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act indicating an intention to take such person into custody, and which subjects such person to the actual control and will of the person making the arrest.' " *Shy v. State*, 234 Ga. 816, 820 (218 SE2d 599). In this case, McFarland was shot and incapacitated by one Cherokee County deputy, placed in restraints by another, and taken in restraints to the hospital in a county vehicle that was escorted by a sheriff's department vehicle. This was sufficient to place McFarland in the physical custody of the deputies. *State v. Nelson*, 261 Ga. 246, 247 (404 SE2d 112).

(c) Whether McFarland was an inmate, however, presents a closer issue. "Inmate" is defined in our Code as "a person who is detained in a detention facility by reason of being charged with or convicted of a felony, a misdemeanor, or a municipal offense." OCGA §§ 42-4-30 (2); 42-4-70 (2). As neither our research nor the parties have discovered authority addressing the specific circumstances of this appeal, we must consider whether the General Assembly intended the term "inmate" to include someone in McFarland's situation. In this regard, a sheriff owes a prisoner in his custody the duty to render necessary medical aid. *Kendrick v. Adamson*, 51 Ga. App. 402 (180 SE 647).

In making this determination we must construe the statutes in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose (*Johnson v. Housing Auth. of Atlanta*, 198 Ga. App. 816, 817 (403 SE2d 97)), and we should read the statute according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (391 SE2d 5). "In construing a legislative act, a court must first look to the literal meaning of the act. [Cit.] If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry." *Diefenderfer v. Pierce*, 260 Ga. 426, 427 (396 SE2d 227). Nevertheless, statutory construction

" 'must square with common sense and sound reasoning.' " *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (418 SE2d 367).

Our law requires a sheriff to furnish persons confined in the jail with medical aid, provided that with respect to inmates covered by Article 3 "will provide such person access to medical aid and may arrange for the person's health insurance carrier to pay" for the health care provided. OCGA § 42-4-4 (a) (2). Article 3 referred to in this section concerns medical services for inmates and was passed in 1992 in an effort to allow sheriffs to meet the rising costs of medical treatment of jail inmates by arranging payment for medical treatment provided inmates by the inmates' health insurance companies, if available. The progress of the legislation in the General Assembly, however, indicates that this legislation was not intended to require that the availability of health insurance was a precondition to obtaining medical treatment for an inmate or that an inmate otherwise would be expected to pay for medical treatment received. See 9 Ga. St. Law Rev. 310-318 (1992).

Additionally, other than for inmates with health insurance for whom arrangements have been made for the health insurance company to pay for the services or care provided (see OCGA § 42-5-2 (b)), "it shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him . . . any needed medical and hospital attention." OCGA § 42-5-2 (a). Although this Code section is included in the chapter of Title 42 that concerns correctional institutions, it nevertheless indicates that it is the intent of the legislature that governmental entities should pay for the medical expenses incurred by inmates who are in their physical custody.

In *Macon-Bibb County Hosp. Auth. v. Houston County*, 207 Ga. App. 530, 532 (428 SE2d 374), this Court held that the county was obligated to pay the full medical expenses of an inmate who was a pretrial detainee when he was taken to the hospital, but was released to his own recognizance while in the hospital in a coma. In a like manner, we hold that Cherokee County is responsible for McFarland's medical care because he was injured while being taken into physical custody by the county sheriff's department and who, but for the seriousness of his injuries, would have been placed in the county's detention facility. In this regard, under OCGA § 17-4-27, McFarland, had he not required immediate medical attention, should have been taken to the jail for booking and under OCGA § 17-4-62 should have been taken before a judicial officer. Thus, as our law contemplates that McFarland would have been retained in the custody of the sheriff for some time after he was taken into custody, we find that McFarland falls within the category of an inmate for these purposes even though he was not actually detained in the detention

facility.

3. Cherokee County's allegation that the trial court erred by holding the county liable for McFarland's medical expenses without establishing that McFarland was indigent is also without merit. Our law places the responsibility for providing medical care to inmates on the counties and there is no requirement in our law that the inmate pay for his own medical expenses. Moreover, under Article 3 of Chapter 4 of Title 42, it is the county's responsibility to determine whether an inmate has health insurance and to arrange for any payment from the health insurance company. OCGA §§ 42-4-50; 42-4-51.

Accordingly, the lower court did not err by granting summary judgment to North Cobb Surgical Associates.

4. North Cobb Surgical Associates' motion to assess damages for a frivolous appeal under OCGA § 5-6-6 is denied.

*Judgment affirmed. Blackburn, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I concur but point out that, if there is any lingering doubt about Cherokee County's liability, it vanishes in the light of the constitutional prohibition against "any person be[ing] abused in being arrested, while under arrest, or in prison." Ga. Const., Art. I, Sec. I, Par. XVII. Cherokee County took custody of McFarland not only to transport him to the hospital for emergency medical aid but also to charge him with aggravated assault (OCGA § 16-5-21). That is evident from the fact that warrants were immediately obtained by Cherokee County officers to search his residence and his body for evidence in connection with such a charge.

It could hardly be argued that it would not be an abuse to fail or refuse to obtain medical aid for McFarland after he was shot. The statutes discussed in the majority opinion are an affirmative implementation of this constitutional prohibition. There is, moreover, no contention or evidence that Cherokee County was acting as McFarland's financial agent when it delivered him to the hospital and arranged for medical treatment.

DECIDED MAY 22, 1996.

*Robert M. Mahler*, for appellant.

*Conoscienti, Storm & Buccellato, Joseph D. Buccellato*, for appellee.