A97A1193. MACON-BIBB COUNTY HOSPITAL AUTHORITY
v. REECE et al.
(492 SE2d 292)

BLACKBURN, Judge.

The Macon-Bibb County Hospital Authority (the hospital) sued Jones County Sheriff Robert Reece, Jones County, and the Jones County Board of Commissioners (collectively the county) seeking reimbursement for medical treatment. After the hospital provided care to three detainees of the sheriff's department, the county refused to pay for such treatment, and this suit ensued. Both parties moved for summary judgment. The trial court granted the county's motion and denied the hospital's motion, and the hospital appeals these rulings. For the reasons set forth below, we reverse the grant of summary judgment to the county and affirm the denial of summary judgment to the hospital.

At issue is OCGA § 42-5-2 (a), which provides that "it shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him . . . any needed medical and hospital attention." Accordingly, in determining whether the county is liable for the medical care given to the detainees, two major issues must be determined: whether these detainees were in the physical custody of the county sheriff's department, and whether the detainees qualified as

"inmates" as that term is used in OCGA § 42-5-2 (a).

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). A de novo review of the evidence is conducted when reviewing summary judgment determinations. See *Gaskins v. Hand*, 219 Ga. App. 823, 824 (466 SE2d 688) (1996).

1. The trial court found that the medical expenses at issue were not incurred while the detainees were in the custody of the county. The hospital enumerates this finding as error, and argues that the sheriff's department did have physical custody of the detainees. Under OCGA § 42-5-2 (a), for the county to be liable for the detainees' medical treatment, the county sheriff's department must have been in "physical custody of [the] inmate[s]."

The facts show that in the early morning hours of May 25, 1995, sheriff's deputy Guy Mosteller received a radio dispatch to be on the lookout for three males who had just left the scene of a possible burglary. Another officer spotted a car matching the description given, and notified Mosteller that the car was approaching Mosteller's area. As the car approached, Mosteller's radar indicated that it was traveling 75 mph in a 55-mph zone. He activated his lights and siren and pursued the vehicle, but the driver refused to stop for two miles. Eventually, the vehicle stopped.

Mosteller ordered the driver, Robbie Freeman, out of the car, and Freeman told Mosteller he had been shot. The two passengers, Antonio Hughes and Handy Taylor, also informed Mosteller upon exiting the car that they had been shot. All three men were patted down for weapons, and a gun was recovered from Taylor. Another gun was located when the car was searched. Mosteller then handcuffed the three men and sat them down in the median of the road, arranged for an ambulance, placed the three handcuffed men in the ambulance when it arrived, arranged to impound the car, followed the ambulance to the hospital so that he could stay with the subjects, and did not remove the handcuffs until arrival at the hospital. Mosteller stayed at the hospital approximately seven hours while the men were treated before concluding his investigation into the matter.

Taylor was released from the hospital on May 27, 1995, and was arrested on May 30, 1995. Freeman and Hughes both remained hospitalized until June 7, 1995, and were arrested on June 13, 1995.

Based upon the record before us, there are facts from which a jury could find that the three detainees were in custody when they received medical treatment from the hospital. When Mosteller handcuffed the men and sat them down in the median of the road, he

placed them under arrest. "Arrest is defined as the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act indicating an intention to take such person into custody, and which subjects such person to the actual control and will of the person making the arrest." (Punctuation omitted.) *Cherokee County v. North Cobb Surgical Assoc.*, 221 Ga. App. 496, 498 (2) (b) (471 SE2d 561) (1996). Although the county maintains that the men were not under arrest because Mosteller never informed them that they were under arrest, arrest can occur even when a suspect is not told that he is under arrest. See *Tolbert v. Hicks*, 158 Ga. App. 642, 643 (281 SE2d 368) (1981).

Mosteller then escorted Freeman, Hughes, and Taylor to the hospital, and did not remove their handcuffs until after arriving at the hospital. See *Cherokee County*, supra at 497-498 (a) (when officers subdue a subject, render first aid, and transport him to the hospital, physical custody is shown). Once there, Deputy Mosteller remained at the hospital seven hours after the men were admitted. He filled out admission paperwork on them, and indicated on one form that the men were "prisoners" of the sheriff's department, although he denied to a nurse that they were prisoners and wrote "send bill to patient[s]" on the form. While at the hospital, he gave his permission for the mother of two of the men to speak to them. He also had the men's clothing inventoried and left property receipts for it, and obtained gunshot residue tests from two of the men.

In light of these facts, a jury could conclude that the men were in custody when they arrived at the hospital, and that they remained in custody for some period of time after that. The county would be liable for all medical expenses incurred until custody ended, and it is clear that a jury issue remains as to that fact. Cf. *Whatley v. State*, 196 Ga. App. 73, 78 (395 SE2d 582) (1990) (whether defendant was in custody for *Miranda* purposes a mixed question of law and fact). Accordingly, summary judgment was improperly granted to the county on this issue.

However, a jury could also find from this evidence that the men were not in custody when medical care was rendered, and in that case, the county would have no liability for the medical expenses incurred. Although the facts clearly indicate that the men were under arrest when they entered the hospital in handcuffs with Deputy Mosteller, a jury could find that custody ended at some point after Mosteller removed the handcuffs and turned the men over to medical personnel. While Mosteller's seven-hour presence at the hospital and his actions with respect to the men during that time may be consistent with custody, they do not demand a finding of custody for the duration of the men's hospital stay. The fact that all three men were allowed to leave the hospital voluntarily and were re-arrested

several days after their respective releases from the hospital suggests that they were not in custody during their entire hospital stay. Therefore, the trial court properly denied summary judgment for the hospital on this issue.

2. We must also evaluate whether the detainees qualified as "inmates" under OCGA § 42-5-2 (a). Pursuant to that Code section, "the governmental unit, subdivision, or agency having the physical custody of an inmate [must furnish] him [with] any needed medical and hospital attention." The trial court found that the detainees were not inmates of the sheriff's department when their medical expenses arose, and the hospital enumerates this finding as error.

In *Cherokee County*, supra, we examined the definition of "inmate" as it relates to a governmental unit's liability to pay for medical expenses. We noted that "inmate" is not defined at OCGA § 42-5-2, but is defined elsewhere in the Code as " 'a person who is detained in a detention facility by reason of being charged with or convicted of a felony, a misdemeanor, or a municipal offense.' OCGA §§ 42-4-30 (2); 42-4-70 (2)." *Cherokee County*, supra at 498 (c). However, we also held that the absence of such detention in a detention facility, as occurred here, does not preclude a finding that an individual in the sheriff's custody is an inmate for purposes of the provision of medical treatment. Id. at 499-500.

In *Cherokee County* the suspect, McFarland, was shot by a deputy after he charged the deputy with a knife while in the process of being arrested. We held that *"but for the seriousness of his injuries, [McFarland] would have been placed in the county's detention facility. . . . [H]ad he not required immediate medical attention, [he] should have been taken to the jail for booking and [then] been taken before a judicial officer. Thus, as our law contemplates that McFarland would have been retained in the custody of the sheriff for some time after he was taken into custody,* we find that McFarland falls within the category of an inmate for these purposes even though he was not actually detained in the detention facility." (Emphasis supplied.) Id. at 499-500.

The same reasoning applies in this case. Although Deputy Mosteller was not responsible for the men's injuries, the fact that he stopped them as suspects in a burglary upon notice from another police officer, searched them and then placed them in custody is some evidence that, but for their injuries, they would have been detained in the county detention facility at that time. As genuine issues of material fact remain regarding the detainees' status as inmates, summary judgment for the county on this issue was improper.

According to the sheriff's affidavit, a long-term undercover operation was being conducted. The men's involvement with the individual who was the subject of the undercover operation was not clear at

the time they were shot. In order to avoid tipping off the individual to the existence of the undercover operation, the sheriff preferred to wait to charge Freeman, Hughes, and Taylor with any offense until later on in the investigation. While this testimony may seem inconsistent with the facts surrounding the defendant's arrest, it creates a genuine issue of material fact as to whether the men would have been placed in the county detention facility but for their injuries. The trial court therefore properly denied summary judgment to the hospital regarding the men's status as inmates. Compare *Cherokee County*, supra at 497, 499 (c) (suspect an "inmate" as a matter of law for purposes of OCGA § 42-5-2 (a) where it was clear that had he not been shot while being arrested, the arrest would have been completed and he would have been detained in the county detention facility).

3. The trial court based its grant of summary judgment to the county in part on the premise that because the detainees' medical conditions did not arise while they were in the physical custody of the county, the county could not be responsible for their medical treatment. We cannot agree. OCGA § 42-5-2 provides that the inmate must be furnished with "any *needed* medical and hospital attention." (Emphasis supplied.) The county can have no serious argument that these three individuals, all of whom had gunshot wounds, were not in need of medical attention.

If, as the county suggests, it had no responsibility for medical conditions which did not arise while an inmate was in custody, the sheriff's department would never have to furnish medical treatment to anyone who entered its custody with a pre-existing condition, disease, or impairment. This is neither the plain meaning nor the intent of OCGA § 42-5-2, and would likely result in a constitutional violation of the right to be free from abuse during arrest, while under arrest, or in prison. See Ga. Const. 1983, Art. I, Sec. I, Par. XVII; see also Judge Beasley's special concurrence in *Cherokee County*, supra. The trial court therefore erred in granting summary judgment to the county on this basis.

*Judgment affirmed in part and reversed in part. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 16, 1997.

*Sell & Melton, John A. Draughon*, for appellant.
*Groover & Childs, Duke R. Groover, Frank H. Childs, Jr.*, for appellees.