Chris PURVIS, Plaintiff,

v.

CITY OF ATLANTA, et al., Defendants.

Civil Action No. 1:14–CV–03701–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed Sept. 29, 2015.

against Defendants City of Atlanta; Fulton County, Georgia; and Fulton County Sheriff Theodore Jackson, in his individual and official capacities (Fulton County and Sheriff Jackson are referred to as the "Fulton County Defendants"). Plaintiff alleges that he was lawfully arrested by a City of Atlanta police officer for drinking in public and then unlawfully held by the City of Atlanta and Fulton County for an additional five to six days on an invalid warrant. Pending before the Court are Defendants' respective Motions to Dismiss [Docs. 3, 15].[1] For the following reasons, the City's Motion [Doc. 3] is **GRANTED** and the Fulton County Defendants' Motion [Doc. 15] is **GRANTED IN PART** and **DENIED IN PART.**

Jordan Alexander Johnson, The Law Offices of Jordan "Alex" Johnson, LLC, Atlanta, GA, for Plaintiff.

Akua Damali Coppock, City of Atlanta Law Department, Atlanta, GA, Robert N. Godfrey, Tamara Nikki Baines, LaShawn W. Terry, City of Atlanta, Department of Law, Atlanta, GA, Kaye Woodard Burwell, Melody–Angelique P. Bray, Office of the Fulton County Attorney, Atlanta, GA, Walter B. Yarbrough, Office of the County Attorney, Atlanta, GA, Ashley Jenell Moore Palmer, Fulton County Attorney's Office, Atlanta, GA, for Defendants.

### ORDER

AMY TOTENBERG, District Judge.

In this action, Plaintiff Chris Purvis asserts state and federal causes of action

## I. PLAINTIFF'S ALLEGATIONS

The Court derives this factual background from the allegations in the Amended Complaint, which the Court accepts as true on Defendants' Motions to Dismiss.

On or about October 26, 2012, Plaintiff was arrested by a City of Atlanta police officer for drinking in public. (Am. Compl. ¶ 5.) He was not brought before a judicial officer within 72 hours of his arrest. (*Id.* ¶ 6.) Instead, he was held by the City of Atlanta "for between 4 and 5 days." (*Id.*) Plaintiff was told he was being held "due to an outstanding warrant from Fulton County," (*id.* ¶ 7), to which Plaintiff repeatedly responded that the warrant was no longer valid. (*Id.* ¶ 8.)

After being held by the City, Plaintiff was transferred to the custody of Fulton

---

1. Plaintiff filed a timely Amended Complaint in response to Defendants' original Motions to Dismiss [Docs. 3, 5]. After the Amended Complaint was filed, the Fulton County Defendants renewed their motion altogether [Doc. 15], while the City asserted in its Reply that the previously filed Motion—and the Reply thereto—apply equally to the Amended Complaint. (Doc. 13 at 1.) Accordingly, The Fulton Defendants' original Motion to Dismiss [Doc. 5] is **DENIED as MOOT** while the City's original Motion to Dismiss is the proper subject of this Order.

County and held by Fulton County officers for an additional day. (*Id.* ¶ 7.) Again, he told his captors that the warrant was no longer valid. (*Id.* ¶ 8.) Plaintiff was released after one day in the custody of Fulton County because the warrant really was, as Plaintiff had maintained, invalid. (*Id.* ¶ 9.)

"Plaintiff lost financial opportunities due to his unlawful detention, as well as suffered damages, pain, and distress." (*Id.* ¶ 13.) Plaintiff's Amended Complaint includes claims against the City of Atlanta, Fulton County, and Theodore Jackson, Sheriff of Fulton County, in his official and individual capacities, for unlawful arrest and detention in violation of the Fourth and Fourteenth Amendments. Plaintiff's Amended Complaint also includes pendent state law claims to vindicate his rights under the Georgia Constitution and other Georgia laws. Plaintiff's specific allegations include Defendants' breaches of the duty to update prison records, the duty to timely bring an arrested individual before a judicial officer, the duty to release an arrestee as soon as he is processed, the duty to train and supervise employees on all of the above duties, and the Defendants' maintenance of policies and practices that violate all of the above duties.

## II. LEGAL STANDARD

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed.2002); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

## III. ANALYSIS

### A. 42 U.S.C. § 1983 claims against Fulton County and the City of Atlanta

Plaintiffs seeking to hold a municipality liable under § 1983 cannot rely upon the theory of *respondeat superior,* but must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir.2004) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); and *Wayne v. Jarvis,* 197 F.3d 1098, 1105 (11th Cir. 1999)). "This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" *Id.* at 1290

(quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)); *City of Canton v. Harris*, 489 U.S. at 385, 109 S.Ct. 1197 ("[A] municipality can be found liable under § 1983 only where 'the municipality *itself* causes the constitutional violation at issue.") (emphasis in original).

█ Thus, to hold Fulton County or the City of Atlanta liable, Plaintiff must show that the County or City itself, acting through an agent with final authority, was responsible for an official policy or custom of "depriving liberty and property . . . without probable cause," and that the policy or custom was the driving force behind the violation of Plaintiff's constitutional rights. *See, e.g., id.; Monell*, 436 U.S. at 690–95, 98 S.Ct. 2018. Plaintiffs may do this either by: (1) identifying "an official policy or a widespread practice or custom that, although not authorized by express municipal policy, is so settled and permanent that it takes on the force of law[,]" or (2) pointing "to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." *Bunyon v. Burke Cty.*, 306 F.Supp.2d 1240, 1250 (S.D.Ga.2004), *aff'd sub nom., Bunyon v. Burke Cty., Ga.*, 116 Fed.Appx. 249 (11th Cir.2004); *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989) ("Under this theory of municipal liability, the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit.").

To survive dismissal "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). The plausibility standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

█ Plaintiff's allegations that *he* was individually wronged do not alone establish a pattern or practice on the part of the County or the City arising out of an official policy or custom so as to state a plausible claim against either Defendant. *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1050–53 (11th Cir.2014); *Grech v. Clayton Cty.*, 335 F.3d 1326, 1330 at n. 6 (11th Cir.2003) (en banc). Furthermore, as Plaintiff's contentions regarding the City's policy and practices are couched in conclusory, formulaic terms, the Court is not bound to accept these allegations as a valid basis for stating a claim supporting City liability. (*See, e.g.,* Am. Compl. ¶¶ 31 34 (alleging that the City "has a policy, practice, or custom arising to the level of a policy of arresting and detaining people without first checking the validity of warrants," and alleging that the City's alleged violations are "frequent, pervasive, and not random or isolated incidents").) *See Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187–88 (11th Cir.2002) (stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal"). The same goes for Plaintiff's threadbare allegations that the County and the City "each have a policy, practice, or custom arising to the level of a policy of not updating records in their computer

systems." (Am. Compl. ¶ 32.) Nor does the Complaint contain allegations sufficient to identify a single decision made by a final policymaker for the County or the City resulting in the systemic failure to update computer records or failure to ascertain the validity of warrants prior to arresting and holding individuals pursuant to such warrants. Defendants' Motions to Dismiss Plaintiff's constitutional claims against Fulton County and the City of Atlanta are therefore **GRANTED.** If discovery reveals an official policy or custom, Plaintiff may seek leave to amend his Amended Complaint, provided that this motion is made within 75 days of the commencement of discovery and includes an amended complaint that fully satisfies the applicable pleading requirements, including specific factual allegations that provide context and information that would support the plaintiff's overall allegations regarding the existence of a policy or practice in place, consistent with the requirements for establishing such a claim under 42 U.S.C. § 1983 against any named parties. *See generally Grech,* 335 F.3d at 1348; *Gold v. City of Miami,* 151 F.3d 1346, 1350–51 (11th Cir.1998). For the reasons stated in Section B below, any such amendment may not be based on Sheriff Jackson's actions as a purported policy maker on behalf of the County.

## B. 42 U.S.C. § 1983 claims against Sheriff Jackson

Plaintiff alleges that Sheriff Jackson "had an obligation" under Georgia law "to keep records to release prisoners on time, knew it was not being done, failed to do so, and his deliberate indifference to that be-

ing done correctly directly led to harm to Plaintiff." (Am. Compl. ¶ 38.) It is unclear whether Plaintiff brings his claims against Sheriff Jackson in his official or individual capacity—or both—so the Court addresses both possibilities.

### 1. Sheriff Jackson—Official Capacity

 When functioning as an arm of the state, a Georgia Sheriff enjoys Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity relating to alleged acts of alleged unconstitutional confinement of inmates or based on a failure to maintain and update correct law enforcement records as well as deliberate indifference to handling these obligations. Thus, in *Grech,* the Eleventh Circuit en banc "conclude[d] . . . that the Clayton County Sheriff is not a county policymaker under § 1983 for his law enforcement conduct and policies regarding warrant information on the [criminal justice information system ("CJIS")] or the training and supervision of his employees in that regard" and in turn, that the County had no § 1983 liability for the acts and policies of the sheriff and his employees in that case. 335 F.3d at 1348.[2] Similarly, in *Purcell v. Toombs Cty.,* 400 F.3d 1313, 1325 (11th Cir.2005), the Eleventh Circuit concluded that a Georgia Sheriff "functions as an arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at a county jail, and, therefore, the Sheriff was "entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity" arising out of claim that Sheriff failed to protect inmate from violence by

---

**2.** In *Grech,* as in the instant case, the plaintiff was confined based upon a bench warrant that had not been properly removed from the

local portion of the statewide CJIS database. *Id.* at 1328 n. 1.

other inmates.[3] *See also Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir.2003). Accordingly, Sheriff Jackson is entitled to Eleventh Amendment immunity from Plaintiff's claim for being held on an insufficiently updated warrant in violation of Plaintiff's constitutional rights.

Plaintiff also seeks injunctive relief "that prevents Defendants from continuing unlawful practices and policies that have *people* held contrary to law and their Constitutional rights." (Am. Compl. at 13 (emphasis added).) Plaintiff points out that a claim for injunctive relief is not barred by the Eleventh Amendment. (Doc. 16 at 4.)

Defendants did not specifically address this argument. While the Court notes its concern about the sufficiency of a claim for injunctive relief when Plaintiff has yet to allege a viable custom and practice or policy claim, the Court will not undertake an analysis of this issue at this stage of the proceedings without full briefing on this issue because this may well be a moot issue.

### 2. Sheriff Jackson—Individual Capacity

Again, it is unclear whether Plaintiff asserts individual capacity claims against Sheriff Jackson as a supervisor or as a direct actor—or both—so the Court addresses both possibilities.

#### a. Sheriff Jackson as Supervisor

It is well settled in this Circuit that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Keith,* 749 F.3d at 1047 (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003)). Instead, Plaintiff may establish the personal liability of Sheriff Jackson for his supervisory conduct by showing either (1) that Jackson "personally participate[d] in the unconstitutional conduct" of others at the jail, or (2) that "there [was] a casual connection between the [unconstitutional] conduct and [Jackson's] actions." *Harper v. Lawrence Cty.,* 592 F.3d 1227, 1236 (11th Cir.2010) (citation and punctuation omitted). And "[t]here are three ways to establish such a causal connection:" (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so;" (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights;" or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith,* 749 F.3d at 1048 (quoting *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)).

Plaintiff does not appear to allege that Sheriff Jackson personally participated in the unconstitutional conduct of others at

---

3. As a notable exception, a sheriff is not entitled to immunity with respect to a prisoner's claim of deliberate indifference to his serious medical needs. *See Manders,* 338 F.3d at 1323 n. 43 (noting that case did "not involve medical care, which counties have a statutory obligation to provide to inmates in county jails"); *Whitt v. Wigington,* No. 1:10-CV-01689-AT, 2011 WL 1576707, at *3 (N.D.Ga. Apr. 26, 2011) (Totenberg, J.); *Dukes v. Georgia,* 428 F.Supp.2d 1298, 1321–22 (N.D.Ga. 2006); *see also Cherokee County v. North Cobb Surgical Assocs., P.C.,* 221 Ga.App. 496, 471 S.E.2d 561, 564 (1996) (noting that Georgia law places the responsibility for an inmate's medical care on the county).

the jail as it related specifically to Plaintiff's constitutional rights. Plaintiff must allege a causal connection between his harm and the Sheriff's acts. Plaintiff's allegations in this regard are:

1) The acts of "unlawful detention and lack of updating warrant records are frequent, pervasive, and not random or isolated incidents." (Am. Compl. ¶ 36.)

2) Sheriff Jackson had an obligation under Georgia law (O.C.G.A. § 42–4–7) to keep accurate records in order to release prisoners on time, and "knew" that obligation was not being fulfilled by others. (*Id.* ¶ 38.)

3) Despite this knowledge, Sheriff Jackson failed to keep accurate records. (*Id.*)

4) This failure "led to harm to Plaintiff" in the form of 5–6 days of false imprisonment. (*Id.*)

■ "After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Randall v. Scott,* 610 F.3d 701, 710 (11th Cir.2010). As a result, Plaintiff's allegations above "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Harper,* 592 F.3d at 1236.[4] Accordingly, Defendants' Motion is **DENIED** as to Plaintiff's claims against the Sheriff based on a theory of his individual, supervisory liability for violations of federal law.

### b. Sheriff Jackson as Direct Actor

■ Defendants assert that Jackson is entitled to qualified immunity for any actions he may have directly taken that allegedly caused Plaintiff's harm. In the Eleventh Circuit,

> [t]o obtain qualified immunity, an official such as a police officer must first show he was "act[ing] within his discretionary authority." *Morton v. Kirkwood,* 707 F.3d 1276, 1280 (11th Cir.2013). Once an official establishes that his activities were within that scope, the plaintiff must demonstrate (1) that "the facts show that the official violated the plaintiff's constitutional rights" and (2) that "the law clearly established those rights at the time of the alleged misconduct." *Id.* at 1281. [Courts] may address those two inquiries in either order. *Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

*Mobley v. Palm Beach Cty. Sheriff Dep't,* 783 F.3d 1347, 1352–53 (11th Cir.2015).

Defendants argue that Plaintiff has failed to allege "a single fact pinpointing the specific conduct of Sheriff Jackson that gives rise to his allegation that Sheriff Jackson was somehow responsible for any alleged violation of Plaintiff's constitutional rights." (Mot. to Dismiss at 14.) The allegations described above, however, in combination with Sheriff Jackson's duties

---

**4.** The Court in *Harper* held that the Plaintiff's supervisory claim withstood a motion to dismiss. The allegations in *Harper* appear to have been more detailed than here. However, in considering the plausibility of Plaintiff's allegations here, the Court takes judicial notice of the fact that the instant case is not the only case where Sheriff Jackson's alleged defective handling of the warrant information system has been placed at issue. *See, e.g., Lewis v. Robinson & Jackson,* No. 14–cv–02601–MHC, Doc. 13 (N.D.Ga. Sept. 19, 2014) (Cohen, J.) (alleging plaintiff was required to serve sentence of incarceration twice because Sheriff Jackson's system was not updated).

under O.C.G.A. § 42–4–7 and judicial notice taken of *Lewis v. Robinson & Jackson* (*see supra* note 4), plausibly suggest otherwise.

Lewis is particularly illuminating. In that case, the plaintiff had previously served his required jail time but nonetheless had to serve those days again because Sheriff Jackson's department's records were not up to date. *See Lewis v. Robinson & Jackson*, No. 14–cv–02601–MHC, Doc. 13. Sheriff Jackson filed a motion to dismiss that was a carbon copy of the one filed in this case. Assuming, *arguendo*, as that court did, that Sheriff Jackson was acting within his discretionary authority, the Amended Complaint plausibly alleges that Sheriff Jackson's direct actions violated Plaintiff's constitutional rights as well. The disturbing similarity to the facts alleged in Lewis make the allegations listed above all the more plausible. Together, these cases are suggestive that Sheriff Jackson, because of the scope of his legally charged responsibilities, plausibly was or should have been aware of serious problems with the clearance of warrant records in his department that would directly impinge on the liberty interests of affected citizens but refused or failed to take any action sufficient to address these problems.

 Defendants first argue that the Fourteenth Amendment claims should be dismissed because all claims in this lawsuit are covered by the Fourth Amendment. Defendants have it backwards. As Plaintiff urges, it was clearly established in October 2012—the time of the violation—that there exists, under certain conditions, a Fourteenth Amendment "constitutional

right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir.1993) *opinion modified on reh'g*, 15 F.3d 1022 (11th Cir.1994); *see also Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir.2009). Such a claim:

> requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment. The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement. The Fourteenth Amendment Due Process Clause includes the right to be free from continued detention after it was or should have been known that the detainee was entitled to release. To establish a due process violation, [Plaintiff] must prove that Sheriff [Jackson] acted with deliberate indifference. This means that Sheriff [Jackson] had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence.

*Campbell*, 586 F.3d at 840 (quotations and citations omitted). Plaintiff's Amended Complaint sufficiently alleges all of those elements.

 However, Plaintiff makes no reference to clearly established Fourth Amendment violations based on a concededly lawful arrest. (*See* Am. Compl. ¶¶ 5–6; Doc. 16 at 7 ("Plaintiff's Complaint does not allege that [the arresting] City of Atlanta police officer harmed plaintiff.").)[5] Indeed, the Court doubts very much that improper continued detention based on an

---

5. The lack of any allegation or suggestion that the arrest itself was unlawful distinguishes this case from *Lewis*. In *Lewis*, the arrest was alleged specifically to have been unlawful, thereby supporting a violation of the Fourth Amendment. (*See* No. 14–cv–02601–MHC, Doc. 13 at 1, 20.)

originally valid arrest violates Fourth Amendment constitutional guarantees at this juncture. *See Thermidor v. Miami–Dade Cty.,* 248 Fed.Appx. 61 (11th Cir. 2007) (finding, on summary judgment, that illegality was not clearly established where officer arrested individual on valid warrant but continued to detain individual after officer was notified that the warrant was invalid); *Arroyo v. Judd,* No. 8:10–CV–911–T–23–TBM, 2010 WL 3044053, at *3 (M.D.Fla. July 30, 2010) (Merryday, J.) (quoting *Jones v. City of Jackson,* 203 F.3d 875, 880 (5th Cir.2000) ("The protections offered by the Fourth Amendment do not apply if the plaintiff challenges only continued incarceration.")); *Bell v. Houston Cty., Ga.,* No. 5:04–CV–390 (DF), 2006 WL 1804582, at *4 (M.D.Ga. June 27, 2006) (Fitzpatrick, J.) (citing *Jones,* 203 F.3d at 880 ("The Fourth Amendment has no application to this case because ... Bell does not challenge any aspect of his arrest or initial seizure.")). Whether or not Plaintiff's Fourth Amendment rights were violated, however, Plaintiff has failed to show, in response to Defendants' assertion of the qualified immunity defense, that "the law clearly established those rights at the time of the alleged misconduct." *Mobley,* 783 F.3d at 1353. Thus, Sheriff Jackson is protected by qualified immunity as to the Fourth Amendment claim but not as to the Fourteenth Amendment claim for continued detention under these circumstances.

Finally, Defendants' arguments that the Amended Complaint is insufficient under Rule 8(a) or the Federal Rules of Civil Procedure or is impermissible shotgun pleading are without merit. Based on the allegations currently before the Court, De-fendants' Motion is **DENIED** with regard to the Fourteenth Amendment claims against Sheriff Jackson in his individual capacity.

### C. State law claims against Fulton County and Sheriff Jackson in his official capacity

Defendants argue that any state law tort claim asserted against Fulton County or Sheriff Jackson in his official capacity (under a theory of respondeat superior[6]) is barred by state sovereign immunity. Generally speaking, sovereign immunity protects the state from suit without its consent. *See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.,* 633 F.3d 1297, 1307 (11th Cir.2011); *see also State Bd. of Educ. v. Drury,* 263 Ga. 429, 437 S.E.2d 290, 292 (1993). Under Georgia law, "[t]he doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Cameron v. Lang,* 274 Ga. 122, 549 S.E.2d 341, 346 (2001); Ga. Const. Art. I, § 2, ¶ IX(d). Counties are among the protected governmental entities, *see Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476, 479 (1994), and Sheriffs acting in their official capacities are "entitled to the benefit of [their] County's sovereign immunity defense." *Id.* at 484.

Accordingly, unless the county or the sheriff has expressly waived its sovereign immunity from liability based on claims asserted here, Plaintiff's state law claims against Fulton County and Sheriff Jackson in his official capacity must be

---

**6.** A sheriff "can only be sued in his official capacity under respondeat superior." *Seay v. Cleveland,* 270 Ga. 64, 508 S.E.2d 159, 161 (1998) (citing *Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476, 484 (1994)).

dismissed. "[S]overeign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." *Id.* at 480. Plaintiff's only allegations as to waiver of sovereign immunity concern ministerial duties negligently performed. (Am. Compl. ¶¶ 4849.) As discussed below, those allegations form the proper rebuttal to an immunity defense to *individual* (as opposed to *official*) liability of state actors—but they are inapposite to the sovereign immunity analysis. The question is whether sovereign immunity has been legislatively waived, and the allegations in the Amended Complaint provide no basis for the Court to conclude that there was such a waiver here. Defendants' Motion to Dismiss is therefore **GRANTED** with regard to all state law claims against Fulton County and Sheriff Jackson in his official capacity based on the doctrine of sovereign immunity. Those claims are **DISMISSED WITHOUT PREJUDICE.** *See Pelham v. Bd. of Regents of Univ. Sys. of Georgia,* 321 Ga.App. 791, 743 S.E.2d 469, 470 n. 1 (2013) ("a motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction"). As there are no other claims against Fulton County, it is **DISMISSED** as a party to this lawsuit.

### D. State law claims against City of Atlanta

The sovereign immunity analysis is slightly different for municipalities like the City of Atlanta. "Under Georgia law, municipal corporations are protected by sovereign immunity pursuant not to Article I of the Constitution [which protects counties like Fulton] but rather Article IX, Section II, Paragraph IX, unless that immunity is waived by the General Assembly." *City of Atlanta v. Mitcham,* 296 Ga. 576, 769 S.E.2d 320, 322 (2015). The General Assembly enacted such a waiver in O.C.G.A. § 36–33–1. Under the pertinent part of that statute, municipal corporations, including the City of Atlanta "shall be liable" "[f]or neglect to perform or improper or unskillful performance of their ministerial duties." O.C.G.A. § 36–33–1(b).

Plaintiff argues that all of the following are ministerial duties that were negligently performed with regard to Plaintiff's extended detention:

1) The duty to update law enforcement records for individuals subject to his custody; [7]

2) The duty to timely bring an arrested individual before a judicial officer;

3) The duty to release an arrestee as soon as he is processed; and

4) The duty to train and supervise relevant employees on performance of the above tasks or duties.

The Georgia Supreme Court recently clarified the meaning of "ministerial" within the municipal sovereign immunity con-

---

7. The statute relied upon by Plaintiff, O.C.G.A. § 42–4–7, reads, in pertinent part: "The sheriff shall keep a record of all persons committed to the jail of the county of which he or she is sheriff. This record shall contain the name of the person committed, such person's age, sex, race, under what process such person was committed and from what court the process issued, the crime with which the person was charged, the date of such person's commitment to jail, the day of such person's discharge, under what order such person was discharged, and the court from which the order issued." O.C.G.A. § 42–4–7(a). No Defendant has argued that this statute does not cover the alleged wrong of updating Plaintiff's entry in the warrant system.

text; in particular, the court described how a "ministerial" function in this context stands in opposition to a "governmental" function. *Mitcham*, 769 S.E.2d at 323. *Mitcham* involved claims of negligent medical treatment of a prisoner. The Court explained the difference between ministerial and governmental functions as follows:

> Governmental functions traditionally have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality. *See Cornelisen v. City of Atlanta*, 146 Ga. 416, 419, 91 S.E. 415 (1917). The exemption from liability for governmental functions "is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature, is one in which the corporation has no particular interest and from which it derives no special benefit in its corporate capacity." *Wright [v. City Council of Augusta*, 78 Ga. 241, 243 (1886) quoting Dillon (2 Municipal Corp. § 976, 3rd ed.) ]. Ministerial functions, in comparison, are recognized as those involving the "exercise of some private franchise, or some franchise conferred upon [the municipal corporation] by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest." *Love v. City of Atlanta*, 95 Ga. 129, 131, 22 S.E. 29 (1894)

*Id.* The Court went on to explain that while the classification of some municipal functions are debatable, the functions involved in the operation of a jail and the treatment of those in municipal custody are solidly governmental functions:

> This Court on occasion has acknowledged the difficulty in determining to which of the two classes a function belongs, the proper classification depending in each case on an interpretation of the powers and duties delegated to the corporation and the character of the function being performed. [ ] Our courts, however, have had no difficulty concluding that the operation of a jail and the care and treatment of individuals in police custody are purely governmental functions related to the governmental duty to ensure public safety and maintain order for the benefit of all citizens.

*Id.* at 324. One of the bases of the medical negligence claims in that case was a statute that required municipal corporations to provide medical treatment to inmates in their custody. Of the unambiguous and straightforward statutory requirement, the Court opined:

> That a municipal corporation performs this function under the mandate of OCGA § 42–5–2(a), a statute requiring municipal corporations and other governmental entities to provide medical treatment to inmates in their custody, is further evidence that it is a function governmental in nature; that is, one performed in obedience to an act of the legislature, for the benefit of the general public, and for which the municipal corporation derives no special benefit.

*Id.* at 324–25.

 *Mitcham*'s broad rule that "the operation of a jail and the care and treatment of individuals in police custody are purely governmental functions related to the governmental duty to ensure public safety and maintain order for the benefit of all citizens," *id.* at 324, applies equally in this case. Both cases involve the operation of a jail: giving an individual medical

treatment in *Mitcham* and bringing someone before a judicial officer and updating their records in this case. It matters not whether a particular act performed pursuant to a municipal function is complicated or simple, discretionary or ministerial: "municipal sovereign immunity applies equally to, i.e., bars claims arising from, both ministerial and discretionary acts." *Id.* at 326 (citations omitted). Rather, what matters is whether the functions are "intended for the benefit of the public at large, without pretense of private gain to the municipality." *Id.* at 323. There is no doubt that the powers and duties delegated and the character of the function performed here—operating a jail and performing certain services for those who are incarcerated there—are governmental in nature. Finally, as in *Mitcham*, the legislative acts that provide the duties at issue here[8] are but further evidence that the function is governmental in nature.

Thus, the municipal sovereign immunity of the City of Atlanta was not waived, and all state law claims against the City are **DISMISSED WITHOUT PREJUDICE.** The City of Atlanta is therefore **DISMISSED** as a party to this lawsuit.[9]

### E. State law claims against Sheriff Jackson in his individual capacity

Defendants argued that Plaintiff's state law claims against Sheriff Jackson in his individual capacity are barred by official immunity. (Doc. 15–1 at 7–10.) The Court finds the reasoning in *Lewis* persuasive on this issue and adopts it here. In particular, failure to update Plaintiff's criminal record for multiple weeks sufficiently alleges negligent performance of a ministerial act. *Lewis,* No. 14–cv–02601–MHC, Doc. 13 at 20–23; *Hicks v. McGee,* 283 Ga.App. 678, 642 S.E.2d 379 (2007). Failure to bring an arrestee before a judicial officer within the statutorily prescribed timeframe is also a failure to perform a ministerial act. *See, e.g., Pitts v. Waiters,* No. CV412–189, 2012 WL 3552703, at *1 (S.D.Ga. Aug. 15, 2012) *report and recommendation adopted,* No. CV412–189, 2012 WL 3780335 (S.D.Ga. Aug. 31, 2012). Accordingly, Defendants' Motion to Dismiss is **DENIED** as it relates to Plaintiff's claims for negligence against Sheriff Jackson in his individual capacity.

Lastly with regard to the Sheriff, the negligent training and supervision claims must be dismissed—again for the reasons stated in *Lewis.* "The very nature of claims for negligent supervision and training implicates discretionary, not ministerial, acts and Plaintiff has not [sufficiently alleged facts demonstrating] that they were undertaken with malice or intent to cause injury, which is the scienter required to overcome official immunity." *Lewis,* No. 14–cv–02601–MHC, Doc. 13 at 22–23. The Motion to Dismiss is therefore **GRANTED** with regard to the state negli-

---

8. *See, e.g.,* O.C.G.A. § 42–4–7(a) ("The sheriff shall keep a record of all persons committed to the jail of the county of which he or she is sheriff."); O.C.G.A. § 35–3–36 (describing reporting duties of criminal justice agencies); O.C.G.A. § 17–4–26 ("Every law enforcement officer arresting under a warrant shall exercise reasonable diligence in bringing the person arrested before the judicial officer authorized to examine, commit, or receive bail and

in any event to present the person arrested before a committing judicial officer within 72 hours after arrest.")

9. The Court notes additionally that Plaintiff's Amended Complaint contains no allegations regarding the City's responsibility for accurate record maintenance or its failure to maintain accurate records.

gent supervision and training claims against Sheriff Jackson.

### F. John Doe Defendants

 All Defendants argue that Plaintiff's claims against John Does 1–3 should be dismissed because fictitious-party pleading is improper. Plaintiff does not oppose this aspect of the Motions. (Docs. 9 at 9 & 16 at 9.) "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir.2010). Accordingly, John Does 1–3 are **DISMISSED** as defendants to this suit. Should discovery reveal that any officers should be added to the case, Plaintiff may seek leave to amend his Amended Complaint at that time.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1) The City of Atlanta's Motion to Dismiss [Doc. 3] is **GRANTED.** The federal claims against the City are **DISMISSED WITH PREJUDICE,** the state law claims are **DISMISSED WITHOUT PREJUDICE.** The City of Atlanta is therefore **DISMISSED** from the case.

2) The Fulton County Defendants' Motion to Dismiss [Doc. 15] is **GRANTED IN PART** and **DENIED IN PART.**

a) All 42 U.S.C. § 1983 and state law claims against Fulton County are **DISMISSED WITHOUT PREJUDICE.** Fulton County is therefore also **DISMISSED** from the case.

b) All Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983 claims against Sheriff Jackson in his official capacity are **DISMISSED WITH PREJUDICE.**

c) All Fourth Amendment claims against Sheriff Jackson in his individual capacity are **DISMISSED WITHOUT PREJUDICE.**

d) All state law claims against Sheriff Jackson in his official capacity are **DISMISSED WITHOUT PREJUDICE.**

e) The state law negligent hiring and retention claims against Sheriff Jackson in his individual capacity are **DISMISSED WITHOUT PREJUDICE.**

3) The surviving claims are:

a) The Fourteenth Amendment claim against Sheriff Jackson in his individual capacity; and

b) The state law negligence claim against Sheriff Jackson in his individual capacity.

The Court recognizes that the facts alleged in support of the two surviving claims against Sheriff Jackson may not be the facts based on a fully developed evidentiary record on summary judgment. Plaintiff's counsel is reminded that a much greater showing consistent with the complex requirements of Section 1983 and Jackson's qualified immunity defense will be required at the summary judgment stage.

While the Court has liberally construed the Complaint allegations in favor of Plaintiff at this stage and found the allegations as to the two surviving claims are plausible, the Court remains obligated to ensure "the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. 1. Accordingly, Plaintiff is **DIRECTED** to

amend his Complaint within 75 days of the filing of Sheriff Jackson's Answer to clearly set forth in more detail the factual allegations supporting the two surviving claims only, after having the benefit of some discovery.[10]

---

10. To the extent discovery in *Lewis v. Robinson & Jackson*, No. 14–cv–02601–MHC, is relevant to the two surviving claims here, Defendant is **DIRECTED** to share that discovery with Plaintiff as soon as possible.