WILLIAM PRYOR, Circuit Judge:
This interlocutory appeal requires us to decide whether sovereign' immunity bars a complaint for damages against a deputy sheriff who failed to accommodate a dietary request from an inmate in a county jail in Georgia. Michael Leslie Lake requested a vegetarian diet for religious reasons during his pretrial detention. After his jailers denied the request, Lake sued Major Michael Skelton in his official capacity as a deputy sheriff of Cobb County. Lake sought declaratory relief, damages, fees, and costs for violations of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act. 42 U.S.C. §§ 1983, 2000cc et seq. The district court denied Major Skelton’s motion for summary judgment against Lake’s claims for damages, and Skelton filed an interlocutory appeal. We conclude that the sovereign immunity of Georgia extends to a deputy sheriff who denies a dietary request of an inmate in a county jail. We reverse the denial of summary judgment against Lake’s claims for damages and remand with an instruction to enter judgment for Skelton on those claims.
I. BACKGROUND
Lake, a Christian, alleges that he made a religious vow in 1997 to abstain from eating meat, animal fats, or gelatin. He also refuses to eat any part of a meal that contains those items or to trade those items for acceptable food. Lake took the vow because he thought it would gain him the friendship of a woman named Leslie.
On November 28,2011, Lake was arrested for contacting Leslie, allegedly in violation of a stalking protective order. He was held without bond at the Cobb County *1335 Adult Detention Center, which is operated by the sheriff of Cobb County. Major Skel-ton served as operational support commander at the Detention Center.
Lake requested a special diet to accommodate his religious vow, but the jailers denied that request, In May 2012, Lake sued Major Skelton. The jailers accommodated Lake’s request on November 29, 2012. Lake was released on July 15, 2013, after the Cobb County Superior Court dismissed all charges against him.
Lake sued Major Skelton in his official and individual capacities. He alleged that Skelton violated the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act. Lake sought declaratory relief, damages, fees, and costs.
Major Skelton moved for summary judgment. The district court granted summary judgment for Skelton, in his individual capacity, but it denied summary judgment for him in his official capacity on the ground that the sovereign immunity of Georgia did not extend to him. Skelton filed an interlocutory appeal, and we have jurisdiction limited to the issue of his immunity, see Black v. Wigington, 811 F.3d 1259, 1270 (11th Cir. 2016).
II. STANDARD OF REVIEW
We review de novo a summary judgment, including the issue whether the sovereign immunity of a state extends to an official. Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1324 n.26 (11th Cir. 2005). We draw all reasonable inferences in favor of the non-moving party, Black, 811 F.3d at 1265, and summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,” Fed. R. Civ. P. 56(a).
III. DISCUSSION
A state is immune from a suit for damages in federal court by one of its own citizens, Hans v. Louisiana, 134 U.S. 1, 14-17, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and this sovereign immunity extends to an official when he aqts as an “arm of the State,” Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Before our en banc decision in Manders, we applied different tests to determine whéther the sovereign immunity of a state extended to an officer. One test had four factors, see Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm’n, 226 F.3d 1226, 1231 (11th Cir. 2000), and another had three factors, see Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000). A third test specifically addressed deputy sheriffs and jailers. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997). In Manders, we established a single test to determine when an official or entity acts as an arm of the state. We first determine “the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise.” Manders, 338 F.3d at 1308. We then determine whether the defendant is an “arm of the State” in his performance of the function by considering four factors: “(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against, the entity.” Id. at 1309. In applying these four factors, we evaluate both the *1336 “governmental structure of [the] office visa-vis the State” and the “functions in issue.” Id.
Manders applied the four-factor test to decide whether the sheriff of Clinch County, Georgia, was acting as an arm of the state in “establishing force policy at the jail and in training and disciplining his deputies in that regard.” Id. at 1319. The first factor “weighted] heavily in favor of immunity” because “[t]he sheriffs authority to use force or the tools of violence ... and the sheriffs obligation to administer the jail are directly derived from the State” and because “use of force and creating force policy are quintessential policing functions.” Id. The second factor also “weighted] heavily in favor of immunity,” id. at 1322, because, “[i]n addition to mandating and controlling sheriffs’ specific duties ..., only the State possesses control over sheriffs’ force policy and that control is direct and significant in many areas, including training and discipline,” id. at 1320. The third factor “tilt[ed] ... toward immunity,” id. at 1324, because the state partially funded the sheriffs office and the financial contributions of the county were required by state law, id. at 1323-24. The fourth factor “d[id] not defeat immunity,” id. at 1329, because although neither the state nor the county was required to pay an adverse judgment, the sheriff apparently would have to pay out of his budget and “both county and state funds are implicated,” id. at 1327. The Court also stated that “the State’s sovereignty and thus its integrity remain directly affected when federal court lawsuits interfere with a state program or function.” Id. at 1329. We concluded that the sheriff of Clinch County, Georgia, was immune from a suit for damages that challenged his policy on the use of force. Id. at 1328.

A. Governmental Structure

We must apply the four-part test from Manders to the function performed by Major Skelton as a deputy sheriff. Whether a deputy sheriff in Georgia is an arm of the state is complicated. On the one hand, the offices of sheriff and deputy are created by state law, see Ga. Const. Art. IX, § I, ¶ III (sheriff); Ga. Code Ann. § 15-16-23 (deputy), sheriffs sometimes function as an arm of the state, see, e.g., Manders, 338 F.3d at 1305-06, and the office is independent from Cobb County and its governing body, see Ga. Const. Art. IX, § II, ¶ 1(c)(1). On the other hand, the Constitution of Georgia refers to sheriffs as “County officers,” see id. Art. IX, § I, ¶ III, sheriffs are elected by the voters of their counties, see Manders, 338 F.3d at 1312, and sheriffs largely exercise their authority within their counties, see id.
Georgia exerts significant control over the Cobb County Sheriff. The office of the sheriff, although independent, is not a “body corporate” like Georgia counties are. See Ga. Const. Art. IX, § I, ¶ I; Ga. Code Ann. §§ 36-1-3 and 1—3—3(7). Instead, the State legislature establishes the powers and duties of sheriffs. See Ga. Const. Art. IX, § I, ¶ III. These duties fall into two broad categories: (1) the common-law duty of “enforc[ing] the law and preserving] the peace on behalf of the sovereign State”; and (2) “specific statutory duties, directly assigned by the State, in law enforcement, in state courts, and in corrections.” Manders, 338 F.3d at 1319. “Most of those duties are an integral part of the State’s criminal justice system and are state functions.” Id.
Georgia uses county jails to incarcerate its state offenders, and it requires sheriffs to take custody of all inmates in the jail in their counties and to administer the jails. Manders, 338 F.3d at 1315-18. Sheriffs are responsible for transferring detainees to and from state court, id. at 1315-16, and *1337 sheriffs have discretion to transfer inmates between counties, id. at 1317. “In contrast, counties have no authority over what corrections duties sheriffs perform, or which state offenders serve time in county jails, or who is in charge of the inmates in thé county jails.” Id. at 1318.
The Georgia Constitution prohibits counties from taking actions “affecting” the office of the sheriff, including “the salaries ... [and] the personnel thereof.” Ga. Const. Art. IX, § II, -¶ 1(c)(1). Counties do not delegate their governmental or police powers to their sheriffs. See Manders, 338 F.3d at 1319. “Although the State requires the county to fund the sheriffs budget, Georgia’s Constitution precludes the county from exercising any authority over the sheriff, including how the sheriff spends that budget.” Id. at 1311; see also Chaffin v. Calhoun, 262 Ga. 202, 415 S.E.2d 906, 907 (1992) (“[AJlthough the county commission has the power and the duty to issue a budget, the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties”).
The independence of sheriffs from the county is underscored by the treatment of sheriffs’ employees. The office of the sheriff has sole authority to appoint and discharge its employees, including deputies. Manders, 338 F.3d at 1311. Both the sheriff and the state can discipline deputy sheriffs for misconduct, see Pellitteri v. Prine, 776 F.3d 777, 781 (11th Cir. 2015), but the county has no such authority, see Grech v. Clayton Cty., 335 F.3d 1326, 1347 (11th Cir. 2003) (en banc). Georgia caselaw recognizes that deputies are employees of the sheriff and not the county. See id. at 1336.
The Cobb County Sheriff derives his powers from the State and, with the exception of funding, is largely independent of the county. Although this framework informs our analysis by providing evidence of “the governmental structure of [the sheriffs] office vis-a-vis the State,” id. at 1309, all we need to decide today is whether Major Skelton acted as an arm of the State in the function of providing food to inmates.
B. The Factors from Manders
The factors from Manders weigh in favor of immunity for Major Skelton. The first three factors—definition in state law, control under state law, and the source of funds—favor immunity. And the fourth factor—responsibility for judgments— “does not defeat immunity.” Id. at 1329.
1. How State Law Defines the Function
We explained in Manders that “the essential governmental 'nature of [a sheriffs] office” includes “performfing] specific statutory duties, directly assigned by the State, in law enforcement, in state courts, and in corrections.” Id. at 1319. One of those duties is taking custody of inmates in the county jail. See id. at 1315; Ga. Code Ann. § 42-4-4(a)(1) (“It shall be the duty of the sheriff ... [t]o take from the outgoing sheriff custody of the jail and the bodies of such persons as are confined therein.... ”). The duty to take custody of inmates entails certain custodial responsibilities over the bodies of inmates. For instance, it is “the duty of the sheriff’ to furnish “medical aid, heat, and blankets, to be reimbursed if necessary from the county treasury.” Id. § 42-4-4(a)(2). Georgia courts have interpreted this provision as giving sheriffs exclusive control vis-a-vis the county over choosing vendors for medical care. See Bd. of Comm’rs of Spalding Cty. v. Stewart, 284 Ga. 573, 668 S.E.2d 644, 645 (2008) (“[T]he sheriff necessarily *1338 is vested with authority to enter into contracts with medical care providers. The [county] board cannot control the sheriffs choice [of provider].” (citation omitted)).
Another such responsibility is the function of providing food to inmates, which title 42 of the Georgia Code imposes directly on the sheriff. See Ga. Code Ann. §§ 42-4-32, 42-5-2. We first discuss sections 42-4-32 and 42-5-2 individually. We then consider sections 42-4-32 and 42-5-2 in the broader context of Georgia law. Finally, we address, the office of deputy sheriff, concluding that a deputy sheriff wears a “state hat,” Manders, 338 F.3d at 1319, when determining whether to provide an inmate with his requested diet,
a.Section 42-4-32
Chapter 4 of title 42 governs “municipal [and] county jail[s] used for the detention of persons, charged with or convicted of either a felony, a misdemeanor, or a municipal offense.” Ga. Code Ann. § 42-4-30(1). Section 32 of that chapter governs the provision of food. It provides that all inmates in the county jail shall receive “not less than two substantial and wholesome meals daily.” Id. § 42-4-32(b). It also requires that “[a]ll aspects of food preparation and food service shall conform to the applicable standards of the Department of Public Health.” Id. § 42-4-32(a).
Section 42-4-32 imposes duties on the “officer[s] in charge” of municipal and county jails, id. -§ 42-4-32(d), which the statute defines primarily as “the sheriff’ of a county jail, id. § 42-4-30(3). That section 42-4-32 imposes duties directly on the sheriff, a constitutional officer of the state of Georgia, see Ga. Const. Art. IX, § I, ¶ I, and not on the county in which the jail is located, is evidence- that the provision of food is a state function under Georgia law.
b.Section 42-5-2
Chapter 5 of title 42 also supports our conclusion that the provision of food is a state function. Although chapter 5 regulates “correctional institutions of state and counties,” Ga. Code Ann. tit. 42, ch. 5, its provisions are devoted in part to allocating responsibilities between correctional institutions and jails, see, e.g., id. §§ 42-5-51; 42-5-2; see also City of Atlanta v. Mitcham, 296 Ga. 576, 769 S.E.2d 320, 325 (2015) (discussing the provision of medical treatment by a municipal corporation under section 42-5-2(a)); Graham v. Cobb Cty., 316 Ga.App. 738, 730 S.E.2d 439, 443-44 (2012) (distinguishing the obligation of a county to pay for medical care under section 42-5-2 and the duty of the sheriff and his deputies to provide it). Section 42-5-2 makes it “the responsibility of the governmental unit, subdivision, or agency 'having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention.” Ga. Code Ann. § 42-5-2. Lake argues that because counties are the governmental unit with custody under section 42-5-2, the provision of food is a county function. But Georgia law clearly requires the sheriff to “take ... custody of the jail and the bodies of such persons as are confined therein.” Id. § 42-4-4(a)(l). The sheriff, not the county, is the “governmental unit, subdivision, or agency” having custody of inmates in county jails. Section 42-5-2 supports our conclusion that Georgia imposes food-service responsibilities .directly on the sheriff as part of his custodial duties.
c.Sections 42-4-32 and 42-5-2 in Context
To the extent that doubt remains about the source of the sheriffs responsibility *1339 under sections 42-4-32 and 42-5-2, we look to the broader context and structure of Georgia law. See Manders, 338 F.3d at 1310-12, 1319. As a general matter, the sheriff holds a constitutional office independent of Cobb County and its governing body, see Ga. Const. Art. IX, § II, ¶ 1(c)(1), and subject to control by the Georgia legislature, see id. Art. IX, § I, ¶ III(a)-(b). Counties do not delegate power to sheriffs, see Manders, 338 F.3d at 1319, and “Georgia’s Constitution precludes the county from exercising any authority over ... how the sheriff spends [his] budget,” id. at 1311; see also Ga. Const. Art. IX, § II, ¶ I(c)(1); Chaffin, 415 S.E.2d at 907.
Caselaw interpreting section 42-5-2 in the context of medical care suggests that the statute operates differently depending on whether the jail in question was a municipal or, county jail. Section 42-5-2 imposes a unified duty on municipalities to pay for and ensure that inmates are provided with medical care. See Mitcham, 769 S.E.2d at 325 & n.5 (explaining that municipalities are responsible under section 42-5-2 for the failure of municipal police to provide “needed medical and hospital attention” to inmates in pretrial detention (quoting Ga. Code Ann. § 42-5-2(a))). And municipal jails are run by the chief of police, who is appointed and supervised by the municipality. See Ga. Code Ann. § 42-4—1(b) (“[Cjhiefs of police are the jailers of the municipal corporations and have the authority to appoint other jailers, subject to the supervision of the municipal governing authority, as prescribed by law.”).' But counties lack supervisory authority and “delegate no powers or duties to sheriffs.” Manders, 338 F.3d at 1319. With respect to county jails, section 42-5-2 imposes two separate duties: the county must fund the provision of medical care, and the sheriff must select an appropriate provider and ensure that' inmates receive care when necessary. See Stewart, 668 S.E.2d at 645 (holding that sheriffs enjoy exclusive control over the provision of medical care).
Our dissenting colleague argues that the Georgia Court of Appeals has long construed section 42-5-2 to impose a duty on counties, not sheriffs, to provide medical care. Diss. Op. at 1345, 1345-48. He reads sections 42-5-2 and 42-4-32 “harmoniously” to mean that- “the sheriff acts on behalf of the county” when providing food to inmates. Id. at 1347. We respectfully disagree.
The Georgia Court of Appeals has never construed section 42-5-2 to mean that a sheriff acts on behalf of the county when he provides medical care. Instead, the Georgia Court of Appeals, like we do, distinguishes between the duty imposed by section 42-5-2 on a county to fund medical care and the duty of a sheriff to provide medical care. See Tattnall Cty. v. Armstrong, 333 Ga.App. 46, 775 S.E.2d 573, 577 (2015) (en banc) (explaining that section 42-4-4(a)(2) “places certain duties on a sheriff to provide an inmate with medical care,” whereas section “42-5-2(a) imposes upon the county the duty and cost of medical care for inmates” (quoting Graham, 730 S.E.2d at 443)), overruled on other grounds by Rivera v. Washington, 298 Ga. 770, 784 S.E.2d 775 (2016). And none of the other decisions cited by our dissenting colleague hold that section 42-5-2 imposes a non-fiscal duty on counties in particular. See Epps v. Gwinnett Cty., 231 Ga.App. 664, 499 S.E.2d 657, 663 (1998) (failing to distinguish between the duty imposed on counties by section 42-5-2 and the duty imposed on sheriffs); Cherokee Cty. v. N. Cobb Surgical Assocs., P.C., 221 Ga.App. 496, 471 S.E.2d 561, 564 (1996) (citing Ma *1340 con-Bibb Cty. Hosp. Auth. v. Houston Cty., 207 Ga.App. 530, 428 S.E.2d 374, 376 (1993)) (explaining that 42-5-2 imposes cost of inmate medical care on the county).
Section 42-5-2 regulates both the furnishing of “food” and the furnishing of “needed- medical and hospital attention,” Ga. Code Ann. § 42-5-2, and we draw the same distinction regarding food that the Georgia Supreme Court and the Georgia Court, of Appeals have drawn regarding medical care. Although the Georgia Code may not- be a model of clarity when it comes to allocating responsibility in the context of corrections, we conclude that the duty to feed inmates—including the denial of an inmate’s dietary request—is not delegated by the county but instead is “directly assigned by the state.” Manders, 338 F.3d at 1319; see also Boswell v. Bramlett, 274 Ga. 50, 549 S.E.2d 100, 102 (2001) (“[T]he ‘[p]owers of county commissioners are strictly limited by law, and’ ... ‘[i]f there is reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative.’ ” (second and fourth alterations in original) (quoting Mobley v. Polk Cty., 242 Ga. 798, 251 S.E.2d 538, 541 (1979))).
d. Deputy Sheriffs
A deputy’s functions are derived from the sheriffs functions, so the deputy’s performance of this function is also a state function. Georgia law allows sheriffs “in their discretion to appoint one or more deputies.” Ga. Code Ann. § 15-16-23. Deputies are employees of the sheriff, and only the sheriff can hire deputies. Pellitteri, 776 F.3d at 780. Although the sheriff may place his deputies under a county civil-service system, it is his choice whether to do so. See Grech, 335 F.3d at 1338. And the sheriff trains and supervises deputies. See id. at 1336. Because the sheriff wears a “state hat,” Manders, 338 F.3d at 1312, when he denies an inmate’s dietary request, and because a deputy receives all of his powers and obligations with respect to feeding inmates from the sheriff, we conclude that a deputy also wears a “state hat” when he denies an inmate’s dietary request.
2. Where State Law Vests Control
Georgia law vests control over the denial of Lake’s dietary request in the state through the law on feeding inmates in county jails- and the law on training and disciplining deputies. State law regulates food preparation and food service in the jail. It guarantees inmates “not less than two substantial and wholesome meals daily,” Ga. Code Ann. § 42-4-32(b), and provides that “[a]ll aspects of food preparation and food service shall conform to the applicable standards of the Department of Public Health,” id. § 42-4-32(a). As we explained in Manders, this regulation of “the preparation, service, and number of meals” is “evidence of how the duties of sheriffs in Georgia are governed by the State and not by county governing bodies.” 338 F.3d at 1317 n.30. This statute establishes state control over the feeding of Lake and, by extension, over Major Skelton’s denial of Lake’s dietary request.
Lake dismisses section 42-4-32 as a law of general application that cannot establish control, but we disagree. Although Lake is correct that Manders- distinguished “laws of general application” that do not establish control from “specific statutes” that do, id. at 1321, Lake is wrong that section 42-4-32 is a law of general application. Section 42-4-32 applies only to jails. The section uses the term “officer in charge,” Ga. Code Ann. §42-4-32(d), which the *1341 statute defines as “the sheriff, if the detention facility is under his supervision, or the warden, captain, or superintendent having the supervision of any other detention facility,” id. § 42-4-30(3). Because section 42-4-32 contemplates county jails run by sheriffs or his appointees, it is not a law of general application.
That section 42-4-32 governs both municipal and county jails does not affect this conclusion. As we discussed in connection with the first factor from Manders, Georgia law makes municipalities responsible for complying with' section 42-4-32 in municipal jails. See Ga. Code Ann. 42-4-30 (referring to municipal jails). But the responsibility of sheriffs to comply with section 42-4-32 is.direct and subject only to state control. Cf. Manders, 338 F.3d at 1319; Stewart, 668 S.E.2d at 646.
Lake also argues that the county controls the function of feeding inmates because it pays for the food, but this funding does not establish control. As we have explained, “The Georgia Supreme Court has held that counties ‘must provide reasonably sufficient funds to allow the sheriff to discharge his legal duties,’ and that ‘the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties.’ ” Manders, 338 F.3d at 1323 (quoting Chaffin, 415 S.E.2d at 907-08). The state, not the county, has legal control over the preparation and service of food in county jails.
Lake next argues that the food-service contracts signed by the county, the sheriff, and the food vendors appear to give the county some control, but these contracts do not affect our analysis of where state law vests control. We acknowledge that Manders referred vaguely to the “degree of control the State ’maintains over the entity,” id. at 1309, and to counties not having control, see id. at 1321, 1322, 1328. But the en banc Court specifically defined the factor as “examining] where Georgia law vests control,” id. at 1320 (emphasis added), and we applied it consistent with that definition, see id. at 1320-22. For the reasons already discussed, Georgia law vests control over feeding inmates in the state.
The training and discipline of deputies provides further evidence of control by the state. The Peace Officer Standards and Training Council,’ a state entity, can discipline deputy sheriffs for misconduct by reprimanding them or by limiting, suspending, or revoking their certification as peace officers. Pellitteri, 776 F.3d at 781. Moreover, the state trains and disciplines sheriffs, Manders, 338 F.3d at 1320-21, and sheriffs train and discipline deputies, Greek, 335 F.3d at 1336. This disciplinary power includes the obligation to ensure that sheriffs do not “[v]iolat[e] or attempt ] to violate a law ... of [Georgia] ... [or] the United States,” Ga. Code Ann. § 35—8—7.1(a)(7), including the First Amendment, the Religious Land Use and Institutionalized Persons Act, and sections 42-4-32 and 42-5-2 of the Georgia Code. Cobb County, in contrast, has no power over training or discipline. See Manders, 338 F.3d at 1320-22. We conclude that, under Georgia law, the state controls the denial of an inmate’s dietary request.
3. Source of Funds
The third factor is the source of funding for the function at issue. We concluded in Manders that when the county is required to pay by state law and the state provides some funding, this factor “tilt[s] ... toward immunity.” Id. at 1324. The application of this factor in this appeal is indistinguishable[1] from the application in *1342 Manders, so we are bound to reach the same conclusion. The state pays for some of the operations of the sheriffs office, and the county “bears the major burden of funding [the sheriffs] office ... because the State so mandates.” Id. at 1323. Under Manders, this factor slightly favors immunity..
4, Responsibility for Adverse Judgments
The fourth factor looks to “the source of the funds that will pay any adverse judgment.” Id. at 1324. In Georgia, counties are not liable for judgments against the sheriff in his official capacity, id. at 1326, and no law requires the state to pay an adverse judgment against a sheriff in his official capacity, id. at 1327. Instead, the sheriff “apparently would have to pay any adverse federal court judgment against him in his official capacity out of the budget of the sheriffs office,” which “implicate[s]” “both county and state funds.” Id. But as we explained in Manders, the Supreme Court has “[njever ... required an actual drain on the state treasury as a per se condition” of sovereign immunity. Id. And “the State’s sovereignty and thus its integrity remain directly affected when federal court lawsuits interfere with a state program or function.” Id. at 1329. For these reasons, we concluded that, “[a]t a minimum; this final factor does not defeat immunity.” Id.
As with the third factor, the application of the fourth factor in this appeal is resolved by Manders. The sheriff apparently would pay for an adverse judgment against Major Skelton out of the sheriffs budget, but regardless of the effect on state finances, “an actual drain on the state treasury” is not required for immunity to apply under Manders. Id. at 1327. Under Manders, “this final factor does not defeat immunity.” Id. at 1329.

C. Skelton Is Entitled to Sovereign Immunity.

Overall, the factors from Manders favor immunity. The first two factors strongly favor immunity: a deputy sheriff derives his powers and obligations from the sheriff, and “[s]heriffs’ duties and functions are derived directly from the State, performed for- the State, and controlled by the State.” Id. at 1328. The third factor slightly favors immunity for the reasons stated in Man-ders, see id. and the fourth factor- “does not defeat immunity” for the reasons stated in Manders, id. at 1329.
We acknowledge that we reserved judgment in Manders about a “case of feeding ... inmates, which necessarily occur[s] within the jail,” Id. at 1319. But we also observed that Georgia law “regulates the preparation, service, and number of meals,” which we called “evidence of how the duties of sheriffs in Georgia are governed by the State and not by county governing bodies.” Id. at 1317 n.30. To the extent that our dissenting colleague suggests that this appeal should be decided based on “the Eleventh Amendment’s twin reasons for being,” Diss. Op. at 1350 (quoting Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)), we can only say that we are bound by the test of the en banc majority in Manders, not the dissent. See Manders, 338 F.3d at 1329-32 (Anderson, J., dissenting) (arguing for an approach based on the “Eleventh Amendment’s twin reasons for being” (quoting Hess, 513 U.S. at 47, 115 S.Ct. 394)). And under the test announced in Manders, Major Skelton is entitled to immunity.
IV. CONCLUSION
We REVERSE the denial of summary judgment against Lake’s claims for dam *1343 ages and REMAND for further proceedings with an instruction to enter judgment in favor of Skelton on the claims for damages.

. In each of the cases cited to show that § 42-5-2 imposes a duty on the counties to furnish medical care to inmates in their physical custody, the allegations involved wrongdoing by the sheriff, his deputies, or both. Those decisions rest on the premise that inmates in county jails, while in one sense in the physical custody of the sheriff as the county jailer, see Maj. Op. at 1340, are also in the physical custody of the county such that the county can be held responsible for the actions of the sheriff as its agent, see Macon-Bibb Cty. Hosp. Auth. v. Reece, 228 Ga.App. 532, 492 S.E.2d 292, 293 (1997) (where plaintiffs sued county fer medical expenses based on § 42-5-2, county’s liability turned on “whether these detainees were in the physical custody of the county sheriff’s department”). Cf. Manders, 338 F.3d at 1335 (Barlcett, J., dissenting) ("As governmental units charged with the custody of persons accused of crimes, counties maintain their jails through the efforts of their sheriffs.”).