WILLIAM PRYOR, Circuit Judge, joined by BLACK, Circuit Judge, respecting the denial of rehearing en banc: A majority of the Court has voted not to rehear en banc our decision in Lake v. Skelton, 840 F.3d 1334 (11th Cir. 2016), which held that Georgia’s sovereign immunity bars a complaint for damages against a deputy sheriff who failed to accommodate a dietary request from an inmate in a county jail in Georgia. The panel faithfully applied the arm-of-the-state test set out in Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc), in this appeal. Our dissenting colleague does not “quarrel with this Court’s ruling in Manders.” Dissenting Op. at 1253. Instead, our colleague argues that the panel decision ignored “this Court’s express admonitions in Man-ders” and that the opinion “represents a distinct break from the law established” in Manders. Id. at 1354-55, 1345 n.2. But our colleague misreads both Manders and the panel’s decision. As members of the panel, we write to set the record straight. I. Background On November 28, 2011, Michael Lake was arrested for stalking a woman named Leslie and detained without bond at the Cobb County Adult Detention Center. The sheriff of Cobb County operates the Detention Center, and Major Michael Skelton served there as operational support commander. There is no difference, for purposes of this appeal, between the sheriff and deputy sheriffs. Lake, 840 F.3d at 1342. Lake requested a special diet to accommodate a religious vow he had made to gain him Leslie’s friendship. The jailers denied his request. In response, Lake sued Major Skelton in his official and individual capacities, alleging violations of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act. The district court granted summary judgment in favor of Skelton in his individual capacity, but it declined to grant summary judgment in favor of him in his official capacity. On appeal, the panel considered only the narrow question whether the sovereign immunity of Georgia extends to Skelton when he is sued in his official capacity for decisions made about the provision of food to inmates. On that question, the panel reversed. II. Discussion Our decision in Manders established the analytical framework for deciding whether a state entity is an “arm of the State” entitled to sovereign immunity. We consider four factors: “(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.” Manders, 338 F.3d at 1309. Applying those factors, the Manders Court held that the sheriff of Clinch County, Georgia was “an arm of the State, not Clinch County, in establishing [and implementing a] use-of-force policy.” Id. at 1328. Contrary to our colleague’s assertions, Manders did not decide whether Georgia sheriffs are entitled to sovereign immunity when performing functions other than establishing and implementing force policies. In fact, Manders explicitly disclaimed that interpretation, stating that it “d[id] not answer” the question whether a sheriff “wears a ‘state hat’ for any other functions he performs.” Id. Our colleague distorts this clear limiting language and argues instead that the Manders Court “forcefully swore off its application” to cases, like this one, that involve the provision of food. Dissenting Op. at 1345 n.2. In support, our colleague points to a handful of statements distinguishing that question. Id. at 1345. For example, the Manders Court stated that “obligations involving the jail structure and inmates food, clothing, and medical necessities ... involve wholly separate and distinct matters from the sheriffs force policy” and its implementation. Manders, 338 F.3d at 1322. Manders “challenge[d] only” the sheriffs force policy and its implementation, so the Court limited its holding to “only ... the limited functions” of establishing and implementing the force policy. Id. at 1323, 1328. But Manders offered no “express admonitions” one way or the other for cases involving the provision of food, dissenting op. at 1354; it instead expressly declined to decide the question. When presented with that question, our panel faithfully applied our precedent. We weighed the four arm-of-the-state factors as dictated by Manders and concluded that Georgia sheriffs act as arms of the state when they make decisions about the provision of food. Our colleague argues that the panel incorrectly applied the factors and that its decision was not dictated by precedent. Id. at 1345. But Manders itself rejected many of the arguments our colleague raises. In considering how state law defines the office of sheriff, our dissenting colleague argues that “Georgia law makes absolutely clear that the position of sheriff is defined as an officer of the county, not the state,” id. at 1347, but we decided otherwise in Manders. To be sure, we acknowledged in Manders that, in the words of our colleague, “[t]he Georgia Constitution expressly designates sheriffs as ‘county officers.’ ” Id.; see Manders, 338 F.3d at 1312. But instead of holding that the state constitutional label “weighted] heavily against arm-of-the-state status,” dissenting op. at 1347, we explained that it reflected only “a geographic label defining the territory in which a sheriff is elected and mainly operates.” Manders, 338 F.3d at 1312. We have since reiterated that sheriffs are “only ‘county officers’ in the sense that they have a limited geographic jurisdiction.” Pellitteri v. Prine, 776 F.3d 777, 780 (11th Cir. 2015) (Martin, J.). After reviewing Georgia’s Constitution, statutes, and case-law, the panel followed this precedent and determined that “[t]he Cobb County Sheriff derives his powers from the State and, with the exception of funding, is largely independent of the county.” Lake, 840 F.3d at 1339; see Manders, 338 F.3d at 1312 (“Georgia’s Constitution ... makes the sheriffs office a constitutional office independent from the county entity itself, precludes all county control, and grants only the State control over sheriffs .... ”). Our dissenting colleague also critiques the panel’s analysis of how Georgia law defines the specific function of providing food. Our colleague takes particular issue with how the panel opinion interprets one of the relevant statutes: section 42-5-2 of the Georgia Code. Dissenting Op. at 1348-50. That provision makes it “the responsibility of. the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention.” Ga. Code Ann. § 42-5-2(a). Our colleague’s criticism again misses the mark. As the panel explained, Georgia law clearly requires the sheriff “[t]o take ... custody of the jail and the bodies of such persons as are confined therein.” Id. § 42-4-4(a)(l). Thus, the sheriff is the “governmental unit, subdivision, or agency” having custody of inmates in county jails. Lake, 840 F.3d at 1340. None of the cases cited by our colleague undermines this reasoning! The majority of the Georgia cases cited by our colleague evaluate only whether section 42-5-2 waives the state sovereign immunity of the county. See Tattnall Cty. v. Armstrong, 333 Ga.App. 46, 775 S.E.2d 573 (2015), overruled on other grounds by Rivera v. Washington, 298 Ga. 770, 784 S.E.2d 775 (2016); Graham v. Cobb Cty., 316 Ga.App. 738, 730 S.E.2d 439 (2012); Gish v. Thomas, 302 Ga.App. 854, 691 S.E.2d 900 (2010). As a result, they describe the statute in general terms and do not address, because they had no reason to address, the contours of the duty imposed on the county by the statute. As the panel explained at length, when the Georgia courts have addressed the nature of the duty, they have drawn the same distinction the panel did between the duty to fund and the duty to provide. Lake, 840 F.3d at 1341-42. The Georgia courts have specifically considered the duty to provide medical care, another duty imposed by section 42-5-2. In that context, the Georgia Supreme Court has distinguished between the county’s duty to fund the provision of medical care under section 42-5-2(a) and the sheriffs duty to provide that care. Bd. of Comm’rs of Spalding Cty. v. Stewart, 284 Ga. 573, 668 S.E.2d 644, 645 (2008); Lake, 840 F.3d at 1341-42. This panel adopted that reasoning, and Lawson v. Lincoln County, 292 Ga.App. 527, 664 S.E.2d 900, 902 (2008), a case cited by our colleague, dissenting op. at 1349, supports our conclusion. In Laioson, the Georgia Court of Appeals stated that the county has a duty “to maintain the inmate, furnishing him food,” but explained that “to meet their duty, the county commissioners have ‘a duty to adopt a budget making reasonable and adequate provision ... to enable the sheriff to perform his duties of enforcing the law and preserving the peace.’ ” 664 S.E.2d at 902 (quoting Wolfe v. Huff, 233 Ga. 162, 210 S.E.2d 699, 700 (1974)). Our colleague also suggests that dicta in Manders as well as a Georgia law requiring counties to build and maintain a county jail suggest that the sheriff provides food to inmates on behalf of the county, dissenting op. at 1349-50, but neither argument is persuasive, As discussed above, Manders “d[id] not answer ... whether [a sheriff] wears a ‘state hat’ for any other functions” outside of establishing and implementing a use-of-force policy. 338 F.3d at 1328. And although Georgia law requires that counties “erect” and “repair” the county jail, Ga. Code Ann. § 36-9-5(a), we explained in Manders that “the location where the sheriffs policing function is performed does not automatically transmute the function into a state function or a county function.” 338 F.3d at 1319. Manders also forecloses our colleague’s remaining arguments on the second, third, and fourth arm-of-the-state factors. Our colleague argues that statutes requiring that inmates be provided with daily meals that comply with state health regulations are insufficient to establish control by the state. Dissenting Op. at 1350-51 (citing Ga. Code Ann. § 42-4-32(a) & (b)). But in Manders, we concluded that the regulation of “the preparation, service, and number of meals” served in county jails is “evidence of how the duties of sheriffs in Georgia are governed by the State and not by county governing bodies.” 338 F.3d at 1317 n.30. Our colleague argues that counties have “significant power to oversee the sheriffs operation of the county jail” because grand juries may inspect and make recommendations about the jail. Dissenting Op. at 1351. But Manders explained that “[bjecause the grand jury is independent and equally oversees county governing- authorities, it cannot fairly be said that grand juries work at the counties’ disposal or act for counties in investigating sheriffssor county jails.” 338 F.3d at 1322 n.40. Our colleague argues that the funding factor supports county control because the county pays for the food served in county jails. Dissenting Op. at 1352. But in Manders we held that “[p]ayment of [the sheriffs] budget, when required by the State, does not establish any control by [the county],” and we observed that the county “bears the major burden of funding ... the jail,” including “appropriat[ing] funds for necessities [such as food] to inmates,” only “because the State so mandates.” 338 F.3d at 1324, 1323. And our colleague argues that the fourth factor, responsibility for adverse judgments, supports county control because the state is not directly liable for judgments against the sheriff. Dissenting Op. at 1352-53. But Manders considered the same Georgia budgeting scheme and determined that “the liability-for-adverse-judgment factor does not defeat” immunity because paying a judgment out of the budget of the sheriffs office “implicate[s]” “both county and state funds.” 338 F.3d at 1328, 1329. Finally, our colleague misstates the impact of the panel opinion when she contends that it will “bar[ ] suit against sheriffs for virtually any way they violate a jail inmate’s rights—from the use of force to the denial of medical care.” Dissenting Op. at 1354. As a threshold matter, the panel addressed only the provision of food. The panel did not decide whether the sheriff is entitled to sovereign immunity when he provides medical care, and a review of Georgia law might lead to a different result in a case about the provision of medical care. The panel opinion also addressed only a suit seeking money damages for a decision made by a deputy sheriff in his official capacity. It did not address suits against sheriffs or them deputies in their individual capacities. See Manders, 338 F.3d at 1308 n.7 (collecting cases). And it does not prevent inmates from seeking injunctive relief against sheriffs or their deputies in their official capacities. See Lane v. Cent. Alabama Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014). Far from “achieving] [a] dramatic change in the law,” dissenting op. at 1346, the panel faithfully applied this Court’s en banc precedent in Manders. Because the panel opinion is correct, we agree with the decision not to rehear this appeal en banc.