**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12752

————————————————

NICHOLAS S. BOLTON,

*Plaintiff-Appellant,*

*versus*

SHERIFF OF COWETA COUNTY, GA,

JOHN TAYLOR COLLINS,

    Individually and in his official capacity as a former
    Deputy Sheriff for Coweta County, Georgia,

CHRISTIAN SPINKS,

    individually and in his official capacity as a
    Deputy Sheriff of Coweta County, Georgia,

JON HOUSE,

    individually and in his official capacity as a former
    Deputy Sheriff for Coweta County, Georgia,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-02279-MHC

_____

Before WILLIAM PRYOR, Chief Judge, ABUDU, Circuit Judge, and
CONWAY,[*] District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether three deputies and a sheriff are immune from a complaint of excessive force. Nicholas Bolton fled in his sport utility vehicle after Deputies John Collins and Jon House asked him to produce identification. The deputies pursued Bolton, performed a pursuit intervention technique to stop his vehicle, and then pinned his vehicle between several police cars. As Bolton continued to accelerate, Deputy Collins fired a single shot, which struck Bolton in the eye. Deputy Christian Spinks then removed Bolton from the vehicle, placed him on the ground, and handcuffed him while pressing a knee on Bolton's back. Bolton sued the deputies for excessive force under the Fourth Amendment, *see* 42 U.S.C. § 1983, and the sheriff for supervisory liability, and he sued the deputies for assault and battery under state law. The district court granted summary judgment for the defendants. Because the deputies did not violate Bolton's constitutional rights

_____

[*] The Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

or act with malice, and the sheriff enjoys sovereign immunity, we affirm.

## I. BACKGROUND

We recount the events as depicted in the officers' undisputed bodycam videos. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Where the videos are unclear, we view the evidence in the light most favorable to Bolton as the nonmovant. *See Baxter v. Santiago-Miranda*, 121 F.4th 873, 878 (11th Cir. 2024).

On June 30, 2019, at around 2:30 a.m., Nicholas Bolton was in the backseat of his Tahoe vehicle in the parking lot of a shopping center. Deputy John Collins of the Coweta County Sheriff's Office approached the vehicle, identified himself, and asked for Bolton's identification. Bolton repeatedly questioned why he needed to provide his identification. Deputy Collins told Bolton that he was suspected of loitering and instructed him to produce identification and step out of the vehicle.

Deputy Jon House arrived on the scene and gave Bolton the same instruction. The deputies asked Bolton to step out of his vehicle at least seven times. During the exchange, Bolton moved from the backseat to the driver's seat holding what appeared to be a driver's license. But he did not present his license through the cracked window, roll the window down to allow the deputies to take his license, or step out of the vehicle as directed.

Instead, Bolton suddenly started the ignition of his vehicle. In response, Deputy Collins and Deputy House drew their guns, pointed them at Bolton's vehicle, and commanded him to turn off

the ignition. Deputy House moved toward the driver's side of the vehicle, placed one hand on the front hood, and again told Bolton to turn off the ignition. Bolton drove away, narrowly missing Deputy House as he did so.

The deputies chased Bolton in their cars. During that chase, Bolton drove toward the highway, through two stop signs and on the wrong side of the road. Before Bolton reached the highway, Deputy Collins performed a pursuit intervention technique by hitting the vehicle's right rear corner with the front of his car. Bolton's vehicle spun around and faced Deputy Collins's car.

The two vehicles collided. Deputy Collins exited his car and stood next to it near the front right side of Bolton's vehicle. Bolton's foot continued to press his vehicle's accelerator. His tires audibly squealed as his vehicle pushed against Deputy Collins's car.

Several events then occurred at nearly the same time. First, Deputy House pulled his car to the front left side of Bolton's vehicle. He exited his car and stood in front of Bolton's vehicle and in between his own car and Deputy Collins's car. He then yelled at Bolton to turn off the vehicle. Meanwhile, Deputy Christian Spinks arrived on the scene and hit the rear right side of Bolton's vehicle with his car. Deputy Collins fired one round at Bolton through the windshield and struck him in his right eye. Bolton's foot then came off the accelerator. Deputy Collins told dispatch there were "shots fired."

Bolton was initially motionless but then started moving around and speaking incoherently. Deputy Spinks removed Bolton

from the vehicle and placed him on the ground. Deputy Spinks placed his knee on Bolton's back, handcuffed him, and placed him on his side to await medical assistance. Bolton alleges that Deputy Spinks also placed his knee on Bolton's neck, but there is no evidence in the bodycam videos or otherwise to support that assertion.

Bolton sued Sheriff Lenn Wood and Deputies Collins, House, and Spinks. Bolton alleged excessive force claims against Deputy Collins for shooting him, against Deputy Spinks for pressing his knee against him and pinning him to the ground to handcuff him, and against Deputy House for failing to intervene. He alleged supervisory liability against Sheriff Wood. He also alleged assault and battery claims against the three deputies under Georgia law.

The district court granted summary judgment for the sheriff and the deputies. It ruled that Deputy Collins was entitled to qualified immunity because the shooting was a reasonable use of force to the perceived threat of Bolton's vehicle, and it was not clearly established that the use of force violated the Fourth Amendment. It ruled that Deputy Spinks was entitled to qualified immunity because he only used *de minimis* force, and it was not clearly established that such a use of force violated the Fourth Amendment. And it ruled that Deputy House was not constitutionally required to intervene because Deputy Collins's shooting was not an excessive use of force, and it was not clearly established that Deputy House was required to intervene. It ruled that Sheriff Wood was entitled to sovereign immunity on the supervisory liability claim

because he acted as an arm of the state. And it ruled that the deputies were entitled to official immunity on the state law claims because Bolton did not show that they acted with actual malice.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022).

## III. DISCUSSION

Qualified immunity shields law enforcement officers acting within their discretionary authority unless a plaintiff establishes that "the officer violated a constitutional right" that "was clearly established." *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020) (citation and internal quotation marks omitted). "Both elements must be satisfied for an official to lose qualified immunity," and the two elements "do not have to be analyzed sequentially." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (citation and internal quotations marks omitted). We need not decide if there was a constitutional violation if the law was not clearly established, but "we are permitted to do so." *Id.*

The district court concluded that any violation of the Fourth Amendment was not clearly established for each of Bolton's excessive force claims against the deputies. When a judgment is "based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Bolton fails to explain how any violation of his rights was clearly established. So he has arguably abandoned any challenge of

that ground, and the judgment against his excessive force claims is "due to be affirmed" for this reason alone. *Id.* In any event, Bolton has not established that the deputies violated his constitutional rights.

We divide our discussion in five parts. First, we explain that Deputy Collins is entitled to qualified immunity because his actions were objectively reasonable. Second, we explain that Deputy Spinks is entitled to qualified immunity because his use of force was *de minimis*. Third, we explain that Deputy House is entitled to qualified immunity because he had no duty to intervene. Fourth, we explain that Sheriff Wood is entitled to sovereign immunity. Finally, we explain that the deputies are entitled to official immunity under state law because there is no evidence that they acted with malice.

## A. Deputy Collins Is Entitled to Qualified Immunity Because His Actions Were Objectively Reasonable.

When we review the use of force under the Fourth Amendment, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "We have . . . consistently upheld an officer's use of force and granted qualified immunity in cases where the [suspect] used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force." *McCullough v. Antolini*, 559 F.3d 1201, 1207 (11th Cir. 2009).

In *Pace v. Capobianco*, for example, we held it was a reasonable use of force to fire multiple rounds at a suspect in a stationary car immediately after a pursuit because "reasonable police officers could have believed that the chase was not over" when the suspect's car "was stopped for, at most, a very few seconds when shots were fired." 283 F.3d 1275, 1278, 1282 (11th Cir. 2002). That the suspect did not try to run over the deputies and that he was "effectively blocked in" by three police cars and a curb did not make the use of deadly force unreasonable. *Id.* at 1277–78, 1282.

Similarly, in *Robinson v. Arrugueta*, we held an officer's shooting was objectively reasonable when the suspect was driving toward the officer "at a likely speed of around one to two miles per hour" because the officer was standing a few feet from the suspect's vehicle and had only seconds to react. 415 F.3d 1252, 1254, 1256 (11th Cir. 2005). And recently, in *Settle v. Collier*, we held an officer's use of deadly force was reasonable when the suspect "started the truck and moved the gear shift" because those actions suggested the suspect's "intent to drive the truck and so convert it into a deadly weapon." 160 F.4th 1282, 1289 (11th Cir. 2025).

Bolton argues that Deputy Collins's use of force was not objectively reasonable because his vehicle was immobilized between the three deputies' cars and no longer posed a threat of harm. Yet, it was reasonable for Deputy Collins to believe that Bolton still posed an immediate threat. "[A]ll that a reasonable police officer could have concluded was that [Bolton] was intent on resuming his flight" even though his car was pinned by three police cars because

he "was obviously pushing down on the accelerator . . . [and] the car's wheels were spinning." *Plumhoff v. Rickard*, 572 U.S. 765, 776–77 (2014). Bolton's foot continued to engage the accelerator so heavily that his tires audibly squealed as his vehicle pushed into Deputy Collins's car. It is hard to imagine clearer evidence of Bolton's "intent to drive the truck." *Settle*, 160 F.4th at 1289. Deputy Collins could have reasonably believed that Bolton's vehicle could break free or push Deputy Collins's vehicle out of the way, endangering both Deputies Collins and House, who were standing only a few feet away from the vehicle. *See Robinson*, 415 F.3d at 1256. It was reasonable for Deputy Collins to believe that these possibilities created a need to use force. And it was not excessive for him to fire one round to stop Bolton from pressing the accelerator. *Cf. Pace*, 283 F.3d at 1278 (officer fired into the car five times).

Bolton advances two additional arguments, neither of which persuades. First, he argues that the initial stop was "intentionally conducted in an unlawful, threatening, and confusing manner." But Bolton did not bring a separate claim that his initial stop was unlawful. Second, Bolton argues that the deputies violated departmental policies by chasing him and hitting his vehicle. But "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). And Bolton does not explain how Deputy Collins violated the Fourth Amendment by immobilizing Bolton's vehicle after he drove toward the highway through two stop signs and on the wrong side of the road.

*B. Deputy Spinks Is Entitled to Qualified Immunity Because His Use of Force Was* De Minimis.

Officers are permitted to use some force to effectuate an arrest. *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). The use of *de minimis* force does not violate the Fourth Amendment. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). "For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." *Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010).

Deputy Spinks used *de minimis* force to effectuate Bolton's arrest when he removed Bolton from his vehicle, laid him on the ground, put his knee on his back, and handcuffed his hands behind his back. *See, e.g.*, *id.* (finding *de minimis* force when an officer pulled a suspect out of her car); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (finding *de minimis* force when an officer grabbed a suspect's arm, twisted it around his back, jerked it up high to the shoulder, and then handcuffed him). Even if Deputy Spinks applied force to Bolton's neck, the force was not excessive. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556, 1559 (11th Cir. 1993) (no excessive force when an officer put suspect in a choke hold after the suspect put his hands up), *modified by*, 14 F.3d 583 (11th Cir. 1994); *Myers v. Bowman*, 713 F.3d 1319, 1325, 1328 (11th Cir. 2013) (finding *de minimis* force when an officer injured a non-resisting suspect's neck after forcing him to the ground and placing him in handcuffs).

Bolton argues that Deputy Spinks's use of force was excessive because Bolton was injured and was not resisting arrest. Bolton might not have been actively resisting arrest at that moment, but he had resisted arrest minutes earlier by leading the deputies on a dangerous car chase and by pressing on his accelerator without regard for their safety. Even though Bolton was injured, a reasonable officer could believe that he still posed an immediate threat because he was moving erratically. The minimal amount of force Deputy Spinks used to restrain Bolton was reasonable.

### C. Deputy House Is Entitled to Qualified Immunity Because He Had No Duty to Intervene.

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force . . . can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009) (citation and internal quotation marks omitted). Liability "only arises when the officer is in a position to intervene and fails to do so." *Helm v. Rainbow City*, 989 F.3d 1265, 1272 (11th Cir. 2021) (citation and internal quotation marks omitted). An officer cannot fail to intervene when there is no constitutional violation to thwart. *See Crenshaw*, 556 F.3d at 1294.

Bolton concedes that "[n]obody could have intervened to prevent the [s]hooting within the four . . . seconds it took" after Deputy Collins exited his vehicle. Instead, he argues that Deputy House "failed to intervene several times before the [s]hooting," such as when he did not "explain[] to Bolton that he needed to exit

the vehicle for 'officer safety'; confirm[] Bolton's identity; inquir[e] why Bolton was sleeping in his vehicle in the parking lot; [or] advis[e] Deputy Collins not to pursue [Bolton's vehicle] . . . and[] . . . not to perform an unauthorized [pursuit intervention technique]." None of these alleged failures to intervene involve a constitutional violation. And Deputy Collins did not use excessive force when he shot Bolton. There was no requirement for Deputy House to intervene.

### D. Sheriff Wood Is Entitled to Sovereign Immunity Because He Acted as an Arm of the State.

Sovereign immunity "bars suits brought in federal court when the [s]tate itself is sued and when an arm of the [s]tate is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (citation and internal quotation marks omitted). Bolton argues, without citing any authority, that Sheriff Wood is an agent of the county and not the state. But this Court has consistently held that Georgia sheriffs engaging in law enforcement duties are "arm[s] of the state" based on the governmental structure of the sheriff's office in Georgia. *See, e.g.*, *id.* at 1326–28; *Lake v. Skelton*, 840 F.3d 1334, 1339 (11th Cir. 2016); *Grech v. Clayton County*, 335 F.3d 1326, 1347 (11th Cir. 2003). Sheriff Wood is entitled to sovereign immunity.

*E. The Deputies Are Entitled to Official Immunity on the State Law Claims Because There Is No Evidence That They Acted with Malice.*

Under Georgia law, an officer may be personally liable only if he "act[s] with actual malice or with actual intent to cause injury." GA. CONST. art. I, § II, ¶ IX(d). Malice requires "actual intent to cause harm . . . , not merely an intent to do the act purportedly resulting in the claimed injury." *Selvy v. Morrison*, 665 S.E. 2d 401, 405 (Ga. Ct. App. 2008) (citation omitted). We "inquire into [a defendant's] subjective intent to determine whether he has official immunity under Georgia law." *Jordan v. Mosley*, 487 F.3d 1350, 1357 (11th Cir. 2007).

Bolton argues that the deputies were not entitled to official immunity because their actions intimidated and frightened him throughout the entire incident—the loitering investigation, car chase, pursuit intervention technique, shooting, and arrest. But Bolton points to no evidence that the deputies acted with the subjective intent to cause him harm at any point. The deputies are entitled to official immunity on the state law claims of assault and battery.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the deputies and the sheriff.